Ms. Crouch, you can come on up. We'll first hear from Ms. Crouch on behalf of the appellant. Good morning, may it please the court, counsel. My name is Cara Crouch and I represent the plaintiff appellant Tara Osborn. The district court erred in granting Eppley's motion for summary judgment as to count one of plaintiff's amendment complaint. The Fair Labor Standards Act clearly requires that employers make, keep, and preserve accurate time records of its employees. And defendant Eppley failed to do so with respect to Ms. Osborn. Because the best evidence of her time worked during the relevant time period, February 23, 2019, to August 2, 2021, is not available. Ms. Osborn should not be denied recovery as a result. Ms. Crouch, is there in the record before us any evidence that establishes what Ms. Osborn's typical work week was? There is a couple pieces of evidence, yes, Your Honor. There is her job description stating that her hours of her schedule was expected to be 8 a.m. to 5 p.m. central time, with overtime hours may be required, specifically saying in her job description. There is also a document entitled Agreement Offer of Remote Work, I believe, wherein Ms. Osborn, it was also stated that she was expected to be working during the hours of 8 a.m. to 5 p.m. despite her being a remote employee. Where in the record would we find those? The Offer of Remote Work. And the job description. The job description. Unfortunately, Your Honor, I don't have a BAPE stamp number. Just a document name. I can, I'm sure it was cited in our recitation of facts. So, docket number 21-18, page 13 through 14 would be her two-page job description stating that she was, well, first that she was expected to provide 24-7 on-call support, and also that her hours were 8 a.m. to 5 p.m., and with overtime work, quote, may be required. Ms. Krause, I'd like to continue on from Judge Brennan's question to you, because what I'm wondering is whether we have, even, you know, looking at your cites just now, whether we have the sort of record that would enable a fact finder to understand what her typical work day or work week was like, and why that would typically lead to an overtime of 15 hours a week. Because, look, when I look at our cases like our Brown case, or Judge Pryor's Young case, or Judge Packold's Lee case, I see testimony that gave a concrete sense of what tasks resulted in the plaintiff's overtime hours. In Brown, it was opening and closing the store. In Young, it was that three-hour round trip to the Monroe office several times a week, and so on. What equivalent evidence do we have here? Will we find it in, you know, the parts of the record that you just cited? Yes, Your Honor, there's an abundance of evidence. I would say this case is very similar to the Young case, which, unfortunately, is unpublished, but very on all fours with the facts of this case. Because the plaintiff in that case was also an on-call employee who was expected to provide customer support. She also, in that case, the plaintiff produced, I believe, 16 emails that she sent outside of her regular work hours. In this case, plaintiff has produced considerably more emails that she sent outside of 8 a.m. and 5 p.m. Approximately 70 emails were produced from the relevant time period, which was, again, considerably more than the emails that were produced in Young. There's the travel time as well. There was one instance where the plaintiff who resides in Miss Osborne resides in Washington, Illinois, and on one occasion had to drive 10 hours, I believe, over 500 miles to get to a work site that was a jail facility. But after the emails, I think that the important point might be, as Judge Mim pointed out, that the emails themselves, they don't establish the amount of underlying work associated with the emails. You know, he said many of the emails are fairly brief. Where are the descriptions of the work time associated with those emails? I mean, the mere sending of an email after hours, I don't see how that establishes the extent of her overtime work. I understand your point, Your Honor. I'd like to point out three emails in particular. One email request Miss Osborne received at 5.36 p.m. on a Saturday. She responded to the client 10 minutes later after 5 p.m. stating, I'll take care of it tonight. She also received another email from a customer who was unable to log in at 10.26 p.m. on a Sunday. She responded to the customer in less than 20 minutes at 10.43 p.m. Which laptop are you using and may I log into it? There was another email where she was scheduling a system maintenance with a customer to begin at 7 p.m. Pacific time or 9 p.m. Central time. That was on May 18, 2021. The emails will also reveal that many of the customers that she corresponded with were in different time zones. In states like California, Michigan, and Ohio, particularly all of the servers were physically located in California. And she often had to correspond with a team of employees who worked for a company called Data Resolution. All of those employees were also based in California, which of course is in a different time zone. And that will be reflected in the emails as well. And for the record, which docket entry are you reading from? Unfortunately, I don't have the record for those. The label of the document would be helpful. Right. So all of the after hours or outside of regular business hours, those emails, those are all found in docket 21-17. And ranging from page 17 to 98. So those are where the emails can be found. Thank you. Yeah, well, there certainly is evidence of work conducted outside of normal business hours. But what I found missing would be evidence confirming that the after work, that the after hours were resulted in work that exceeded 40 hours a week. That's what I think we have to zero in on. You know, she was working remotely. She was responsible for setting her own schedule. I just, I hope that we can find some more detail as to her day-to-day work. I understand, Your Honor. And it's important to also keep in mind that this, we're talking about an employee who was terminated. And at the time of her deposition, which was more than a year after her termination, she no longer worked for Epoly. So she was testifying based on her memory and recollection of the job duties she performed the prior year. And how often, how much time she spent doing so, which is a bit difficult. But the just and reasonable inference standard is a low evidentiary burden. So in addition to her deposition testimony, I rarely did not work at least 10 hours a day, she testified. I worked at least 10 hours a day and on weekends. So in addition to that deposition testimony, which again was, you know, she was testifying based on her recollection, which is fine. Because hours works can be reconstructed from memory. It can also be inferred from the particulars of her job, which is also important here, given that she was in her job description and stated she was expected to provide 24-7 on-call support. And she was the only employee doing so for the nation's largest jail contract management company for over a year. She had one counterpart who ended up resigning in February 2020, and no one was hired to replace him. Two other employees also resigned. No one else was hired, including a director of information technology, and that position was vacant. Now, counsel, the district court here also noted that the talk of averages and the computation was somewhat undercut by your client's acknowledgement that things changed, that a software glitch was fixed, that some of her work was shifted. How do we address what the district court found to contradict your client's estimate? Right. So I believe the district court did err in concluding that her testimony was unreliable and directly contradicted by the record. I think something else the district court focused on was the fact that she took sick time and PTO leave for, I believe, around 10 weeks during the relevant period. Of course, plaintiffs can meet the just and reasonable inference standard, even if they worked no overtime at all during some weeks of the relevant time period. And any sick time and paid time off can, of course, be accounted for by FactFinder. There was – I believe you may be referring to, Your Honor, to a – there was a couple of employees who were, I believe, hired to take care of some of her calls. But she testified at her deposition that they were never able to troubleshoot anything, and the company at one point relocated to Tennessee, and those employees were terminated. So it didn't seem to me from the record, or a reasonable FactFinder can find, that no one actually was hired to take the load off and assume some of her responsibilities. In fact, there was resignation after resignation, and no one was hired to replace the employees who were resigning, which also was the case in Brown, where the employee was the only person who was there to open and close the store. Again, Plaintiff Ms. Osborne was the only one providing on-call support to customers. Defendant Appley has the burden – it's a burden-shifting framework, and the framework simply addresses whether a reasonable FactFinder can find a basis for calculating damages. And defendant has the burden to come forward with evidence to negative the reasonableness of the evidence that Ms. Osborne has proffered, which it hasn't done. Ms. Cross, we're going to give you some time for rebuttal, but the legal question here, a couple times you've mentioned just and reasonable inferences. There is case law out there that indicates that that standard applies to damages rather than liability. Is it your position that just and reasonable inferences applies to both liability and damages, or what is your position on that? I think liability has been established here. I think, again, the only question is whether there's a reasonable basis for calculating damages. The damage itself is certain, and the only uncertainty lies in the amount of damages. That's from the Anderson case. So, again, it's a low burden of proof, and I believe that Ms. Osborne has produced a significant amount of evidence, even one that was produced by the plaintiff in Holloway, an Eighth Circuit Court of Appeals case, which I believe the district court erred in citing and relying on. And the rule of law in this circuit is Brown, in which the plaintiff was unable to identify the hours or the days that she worked overtime, but she was still found to have met the just and reasonable inference standard. And for those reasons, the plaintiff respectfully requests that this district court's decision be reversed and remanded. Thank you. Thank you, Ms. Cross. We'll be giving you a couple minutes for rebuttal. Mr. Buck, you are next for the appellee. Thank you, Your Honors. May it please the Court. I want to jump in kind of in a different issue than we've been talking about most directly just now, but to point out that there was an issue over the compliance with Local Rule 7.1D in this case, and specifically the issue with regard to the local rule was whether there was an abuse of the discretion for the court to find that the motion, that the plaintiff's amended response in fact violated the rule by the manner in which it responded to the statement of facts, and specifically those that were listed as undisputed material facts. The court, after looking at Rule 7.1DB2, actually pointed out that the rule itself requires for the non-moving party to look at the, and to respond to each of the individually numbered facts to say whether they're disputed or undisputed, whether they're material or immaterial. And in this case, when the district court looked specifically at the original, the initial response of the plaintiff in this case, that original response did not respond individually by number to the individually numbered statements of facts, statements of material facts, and in fact, basically the plaintiff created her own list of undisputed material facts. Mr. Buck, look, the court deemed your proposed facts admitted, right? Yes. And one of the reasons I wanted to go there, Your Honor, is in counsel for the plaintiff stated a moment ago that when she was asked by this court, what was she relying upon as far as in the docket or in the record for the facts that she was asserting, and I believe what she said was she was looking at docket entry number 21. Docket entry number 21 is the amended, or I'm sorry, the initial or the original response to the motion for summary judgment filed by plaintiff. It bears that 21-18 docket number. That was stricken by this court's March 11, 2024 order. Actually, I think even before that. Not this court, the district courts. Pardon? The district courts. Yes, yes. The district courts, after the motion for summary judgment was filed March 23rd, 2023, on April 13th, the plaintiff Osborne filed her response, her initial response to the motion for summary judgment. On April 27th, 2023, JAB management filed its reply in which it noted that the plaintiff had failed to respond to the undisputed material facts raised by JAB in compliance with rule 7.1, local rule 7.1 D2B. On May 22, 2023, the district courts struck that response, the initial response of the plaintiff to the motion for summary judgment. And then on June 5th, she was allowed to file her amended response, which was docket number 28. And the court then, in its March 11, 2024 order granting summary judgment to the plaintiff in this case, noted that both the original response brief had been struck from the record, as well as the amended response to the undisputed material statement of facts, which basically covered the first 78 paragraphs of the statement of facts. I'm sorry, the motion for summary judgment had 78 individual paragraphs. Their initial, the amended response itself, which was responding only to those number of paragraphs, was also stricken. So you had the original response to the motion for summary judgment was stricken by the court by the March 11, What do you want us to do about it? What I'm going at is the plaintiff has failed to meet her burden almost entirely. She hasn't raised any evidence. She's referenced when you've asked her for support for specific evidence to corroborate her testimony of working on average of 25 hours a week beyond 40. She cited to a stricken response, a stricken amended response to the disputed material facts. So the bottom line, what I want to point out to the court is that we're not looking at actual facts that are still in the record. Then I would also point out to the court that, you know, the case law that's cited by the plaintiff itself doesn't support the notion that testimony, you know, the word, the phrase that's been used is that it takes more than unsupported Ipsy Dixit or bare assertions in order for the plaintiff to meet her initial burden to come forth with sufficient evidence that overtime hours were worked as a matter of just and reasonable inference. What the plaintiff is basically... Would you just do me a favor here? Yes. And just pretend, okay, for a moment that you are Ms. Osborne's lawyer, okay? Would you give me an example of the sort of evidence you would present in order to meet the just and reasonable inference standard as to the extent of her overtime? The difficulty with that is trying to understand, given the manner in which she responded to the, since I'm the plaintiff's lawyer, to the defendant's undisputed material facts, in not individually responding, not saying what was correct or what was disputed or what was material, it makes it very difficult to go back and look particularly at the statement of facts and her initial response to the statement of facts, her basically amended response to the statement of facts that were put in there to decipher what it is that she's pointing to. She does point to emails, although frankly I would note that she was hired in 2012 by the defendant's JAB management. She continued to work for them up until August of 2020. For purposes of the motion for summary judgment, the defendant conceded that the relevant period, number one, conceded that she was non-exempt and also that the three-year look-back period for a willful violation would be applicable so that you could look back from August 2021 when she was terminated to August 2019. Where I was going with that is many of the emails and many of the things she's referencing to support that she worked overtime are even beyond the relevant period itself because she worked for the defendant for such a long period of time. So moreover, the emails themselves don't actually say how much time she spent. It may show that she worked outside of normal hours, but it does not state that she had already worked 40 hours that week. She worked from home starting in 2019. She was allowed to set her own schedule. Pursuant to that, her own supervisor, the president of the corporation, had no idea what she worked. Call hours were to be part of her responsibility, but at the same time, it wasn't known if she had already worked eight to ten hours when she took a call at midnight or took a call at one in the morning or did she work evenings that day or did she work overnight that day. So there's nothing in the emails themselves that corroborate that she was exceeding 40 hours a week with the handful of emails. And some of the emails that were relied upon in producing the discovery, again, go back prior to 2019. So they're not relevant or material to the question before the court. Mr. Buck, I want to take you in a different direction, similar to a question I posed to Ms. Krause. Ms. Krause cited actually the key passage from the Anderson case, 1946 Supreme Court decision. Just in reasonable inferences, do you believe it applies just to damages or to liability and damages? That's standard. My understanding of Anderson and the way it's been applied is it goes to damages primarily. And the plaintiff has to show that the hours worked is the element of damages in the event that there's the claim made. I'm thinking of particular language in some of the cases that we cited. We've got the Brown case, obviously, from 2008, which alludes to this question. I'm specifically thinking about the context of the standard that's to be applied by this court just in reasonable inferences. Would that be to the factual record, whatever it may be, and you've elucidated us on what you believe that to be, or just the damages? And I do believe, and I did find in the Brown v. Family Dollar Stores case, page 595, they do say that the plaintiff must establish damages, and that task is not a difficult one if the employer has not kept records in compliance with the Fair Labor Standards Act. And that's where the Anderson court then proceeded on the notion of proving damages to say that the plaintiff employee had to come forth with sufficient evidence to show that they worked the overtime hours as a matter of just and reasonable inference. Now, as to the question of what that means, you know, I think the Seventh Circuit and the authority we've cited by the Seventh Circuit, even beyond Holloway, sets that standard. Melton v. Tippecanoe, again, this court, this circuit said that there must be more than basically uncorroborated testimony of the plaintiff. And then Melton, this court found that the employee had failed to produce evidence in which to draw just and reasonable inference because although he claimed that when he would give recorded overtime on timesheets to his secretary that she would reduce those and give us back, that she corrected all of his time cards, that was primarily the evidence. And the court there found that, again, he may not rely on unsupported Ipsy Dixit or fair assertions. Melton cited to Turner in the Turner v. O'Salloon in the 2010 opinion from this circuit, the Turner, the plaintiff was a waiter at the, I'm sorry, did you have a question? Just following up on Judge Brennan's question, the Anderson test, there's liability and then there's damages. But under Anderson, we're also talking about the amount and extent of the work being established by just and reasonable inference. What do I do if I say, okay, I think that it has been established that there has been some violations. There are weeks where the plaintiff worked overtime, was not paid. But I am not able to determine on the record at just and reasonable inference as to the amount of that, as to what the damages should be beyond speculative. Where does that leave us? I think that leaves you in the position we're in today anyways. The plaintiff has failed to prove her case. She failed to prove damages, which means she can't recover. She cannot meet her initial burden, as lenient and relaxed as it may be, of showing damages as a matter of just and reasonable inference. She's not entitled to recover those damages. And I think what this circuit, through Melton, Turner v. O'Salloon, Brown v. Family Dollar Store, which actually the Brown v. Family Dollar Store, the court did award damages. And the court did look at more than just the testimony. In fact, that the testimony of the plaintiff in that case was, in fact, corroborated by other evidence, certainly more objective evidence. And that was that that employee who worked at Dollar General was the only one with keys to that particular store. So she had to open the store. She had to get there early. She had to close the store. She was there late. And . . . So here are the records before us. And DACA 21, I think, is your summary judgment paper. So that's in the record. It wasn't stricken. And there's references there to her work hours being 8 to 5. And so we have a situation where it sounds like you expect her to be at work for a 40-hour work. And there's evidence properly in the record saying she also needed to do things outside of work hours. And my position on that is, again, you look at the fact that this employee worked from 2012 to August of 2021. And in 2019, she was allowed to work remotely and work from home. Now, when she was expected to come into the office, the office hours of the JAB management facility were, in fact, 8 to 5. And that's when she was expected to be at work. Ultimately, JAB management and ACH, the company that they provide employees to, moved to Nashville, Tennessee in about . . . It was right around the 2019-2020 time period. And, again, plaintiff was allowed to remain in the Peoria area where she had lived and worked previously and also to work from home and to work remotely. At that point, she didn't have the 8 to 5 requirement. She was allowed to set her own schedule for what worked for her. I will also note that, again, with regard to the claims about the overtime that she was working on taking the help desk call . . . There's also evidence that we cited in the Motion for Summary Judgment that by February, March of 2020, when the other three employees she worked with had resigned . . . tremendously reduced the number of help desk calls she took and the time it took to resolve them. So, again, the period that we're looking at is 2021 back to 2019. And, early 2020, she's acknowledging that the volume of calls was tremendously reduced. We also cited emails where Sue Webster and Jessica Young were asking her what her hours were on help desk calls. And, she responded, well sometimes I get them, sometimes I don't. And, you know, it varies as to how much time I spend on them. So, again, although she testified she took help desk and there's evidence with emails and she answered those after hours . . . There's also evidence to contradict that she was working extensive amounts of overtime as she claimed. You know, 15 to 25 hours a week on average. I mean, it was like 15 during the week and then she would have anywhere from 4 to 16 hours on the weekend. Thank you, Mr. Buck. Thank you very much. We'll now hear Ms. Krause from you. We'll give you two minutes for rebuttal. Thank you. I would first like to address some of the procedural points that prison counsel made. Ms. Osborne has, of course, limited her appeal to the grant of summary judgment as to the count one of her amended complaint. Ms. Osborne also limited her appeal in the way that she's not . . . She's not arguing that there was an abuse of discretion with respect to enforcement of local rules. Because, that's a very difficult argument to make and we're not making that argument. The district court did not strike plaintiff's additional material facts. And also, it was defendant that was the one that introduced over 500 pages of evidence, including all the emails that I referenced. Opposing counsel also mentioned another case, Melton, which is very factually different from this case. In that case, the plaintiff's time cards were automatically reduced to reflect 37.5 hours. Now, if you look at the time cards in the record for Ms. Osborne, they reflect 40.0 hours. So, in that case, the plaintiff was actually able to prove that he worked an additional one hour and 40 minutes beyond that 37.5. The issue was it still wasn't over the 40-hour threshold. The plaintiff in that case also created a spreadsheet from his memory of the hours that he worked, which was directly contradicted by the payroll records that were introduced in that case that reflected he was, in fact, compensated for some lunch periods that he alleged not to be compensated for. I'll also address the implication that the president of this, I believe, Jessica Young, who never actually supervised Ms. Osborne, so, of course, she wouldn't have an idea of the hours that she worked or really a good idea of what her duties and responsibilities were. Ms. Osborne's declaration makes it clear that she was never supervised at any point by Ms. Young. Thank you. Thank you very much, Ms. Krause. And thank you, Mr. Bach, but the case will be taken under advisement.